UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
DR. LISA BUON,

                    Plaintiff,                              19 CV 6760 (NSR)

    -against-

NEWBURGH ENLARGED CITY SCHOOL DISTRICT,
ROBERTO PADILLA, LISAMARIE SPINDLER,

                 Defendants.
-----------------------------------------------------------------------x


## MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS


SUSSMAN & ASSOCIATES
*Attorneys for Plaintiff*
1 Railroad Avenue, Ste. 3
P.O. Box 1005
Goshen, New York 10924

Dated: July 23, 2020

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 1

ARGUMENT.......................................................................................................................... 9

    Point I

    Plaintiff served the summons and complaint .................................................................. 9

    Point II

    Plaintiff can maintain a Title VII claim based upon the termination of
    her position as SMS principal ......................................................................................... 10

    Point III

    Plaintiff has stated plausible claims of racial and
    national original discrimination ...................................................................................... 11

    Point IV

    Plaintiff has not pled a hostile work environment claim ............................................... 14

CONCLUSION....................................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

Back v. Hastings on Hudson Union Free Sch. Dist.,
    365 F.3d 107 (2d Cir. 2004).................................................................13

Fairbrother v. Morrison,
    412 F.3d 39 (2d Cir. 2005)..................................................................11

Konits v. Valley Stream Cent. High Sch. Dist.,
    2006 U.S. Dist. LEXIS 5610 (E.D.N.Y. Jan. 28, 2006) ...................13

Littlejohn v. City of New York,
    795 F.3d 297 (2d Cir. 2015)................................................................12

## Statutes

42 U.S.C. § 1983 ................................................................................10

N.Y. C.P.L.R. § 308 .............................................................................9

N.Y. C.P.L.R. § 311(a)(7)......................................................................9

N.Y. Educ. L. § 2(13) ...........................................................................9

N.Y. Educ. L. § 1711(2)(a) ...................................................................9

N.Y. Educ. L. § 2508(1) ........................................................................9

N.Y. Educ. L. § 2509 ..........................................................................13

N.Y. Educ. L. § 2573 ..........................................................................13

## Federal Rules of Civil Procedure

Fed. R. Civ. P. 4(e) ...............................................................................9

Fed. R. Civ. P. 4(j)................................................................................9

## PRELIMINARY STATEMENT

Defendants move to dismiss plaintiff's Amended Complaint, claiming (1) they were not properly served with her initial *pro se* complaint; (2) plaintiff cannot assert claims against the School District under Title VII regarding the denial of summer school employment in 2019 or her demotion to elementary school principal with its consequent $8,000 diminution in salary because these acts occurred *after* she filed her EEOC charge; and (3) her complaint fails more broadly to state plausible claims for race/national origin discrimination or a claim for a hostile work environment.

Defendants were properly served with the initial *pro se* complaint per district protocol and state law, and their counsel accepted service of the Amended Complaint. Plaintiff amply alleges claims for denial of the summer school position and demotion against Dr. Padilla, the school superintendent who was responsible for these decisions, and against Dr. Spindler, who contributed to these decision by making false claims about plaintiff and disparately treating her through the school year. Plaintiff has plausibly alleged race/national origin discrimination claims against each defendant and has not asserted a hostile work environment claim.

Accordingly, defendants' motion should be granted in part [Title VII claim against district for two decisions Dr. Padilla made] and denied in more substantial part.

## STATEMENT OF FACTS

As set forth in her Amended Complaint, Plaintiff, Dr. Lisa Buon, is an African American woman of West Indian descent. She is of legal age and resides in the Town of Hamptonburg, County of Orange, State of New York within this judicial district. Defendant Newburgh Enlarged City School District ("NECSD") is a municipal corporation situated in the County of Orange, State of New York within this judicial district. It may sue and be sued. At all relevant times, defendant

Roberto Padilla was employed by the NECSD, serving as its Superintendent of Schools within this judicial district. His acts and omissions were undertaken under color of state law. Mr. Padilla is not African American nor of West Indian descent.

During the 2018-19 school year, defendant Lisamarie Spindler served as Assistant Superintendent, Secondary Curriculum and Education for the NECSD within this judicial district. Her acts and omissions were undertaken under color of state law. Defendant Spindler is not African American nor of West Indian descent.

For twelve years, plaintiff served as an elementary school principal at Horizons-on-Hudson, a successful magnet school operated by the NECSD. During her employment in that capacity, defendant Padilla was appointed as Superintendent of Schools.

During the spring of 2017, defendant Padilla approached plaintiff and asked whether she would be willing to assume leadership of South Middle School (hereinafter "SMS"), a troubled school building. In response, plaintiff expressed concern that, in doing so, she would lose the tenure she had earned as an elementary school principal. Defendant Padilla and plaintiff then negotiated the terms of an agreement allowing plaintiff to retain her tenure as an elementary school principal after she became principal of SMS and during her four-year period of probation as a secondary school principal.

On June 21, 2017, the NECSD's Board of Education approved a resolution which appointed plaintiff as Middle School Principal for a four year probationary term "subject to the Principal's receipt of overall APPR ratings pursuant to Education Law Section 3012-d of either Effective or Highly Effective in at least three of the four years preceding tenure conferral . . . ." Upon commencing service as middle school principal, plaintiff was to receive annual salary of at least $154,797.

2

During the 2017-18 school year, plaintiff successfully served as principal of SMS, coordinated the RISE program, and was assigned to work summer school (as she had been assigned for the five prior years). During this school year, plaintiff's supervisors did not call her into disciplinary meetings or otherwise raise issue with the way she administered SMS or discharged duties associated with her other assignments.

In the summer 2018, defendant Spindler was appointed to a newly created administrative position and became plaintiff's immediate supervisor. During the 2018-19 school year, defendants Spindler and Padilla consistently criticized plaintiff, invited her to numerous disciplinary meetings and meted out unjustified chastisement. During the same school year, defendant Spindler did not subject secondary school administrators of races/national origins different from plaintiff's to the same harsh treatment. More specifically, during the 2017-18 school year, Buon successfully implemented the "My Brother's Keeper" program at SMS. However, while other secondary school principals were permitted to craft Empire Programs to meet the needs of their buildings, defendant Spindler denied Buon authority and support needed to continue this program at SMS.

Likewise, while defendant Padilla supported the request from white principal Rob Glowacki to bar a disruptive parent from his schools, plaintiff's like request was ignored and a violent parent permitted ongoing access to SMS.

In late October 2018, defendant Spindler directed plaintiff to advise SMS students that they were not allowed to dress for Halloween. In her memo, defendant Spindler claimed that she had similarly directed other school principals. In fact, she had not told any other middle school principal to make robo-calls to students with this message, and students at the other three schools, none of whom had an African-American or West-Indian principal, wore costumes to school on Wednesday, October 31, 2018.

Further, typically, when central office administrators conduct "walk throughs" of schools, they request that the school principal accompany them.  Defendant Spindler followed the same protocol except when conducting a school walk-though of SMS on November 2, 2018.  Instead, defendant Spindler excluded plaintiff from the walk though.  After the walk-through, Spindler gave plaintiff a list of nineteen items which needed correction -- many of these items had innocent explanations and were not evidence of school-based dysfunction, as defendant Spindler portrayed. Defendant Spindler did not treat other secondary school principals who were not African American or of West Indian descent in a similar manner when she performed collaborative walk throughs of their buildings.

Further, each middle school convened school leadership teams ("SLT") to determine the math program most beneficial to its students. As there was no singular math curriculum, each district middle school was doing something different when it came to math education.   In November 2018, SMS's SLT recommended "Math in the City."   However, again unlike her treatment of SLTs in schools led by principals who were not African-American or of West Indian descent, defendant Spindler chastised plaintiff for this choice, inaccurately claiming that "Math in the City" was not a math program which could be implemented at a middle school (outside of New York City).

Contravening the SLT's recommendation, defendant Spindler directed plaintiff's staff to attend staff development in another math program, a course of action contrary to that used when Lynette Brunger, a white principal, chose a program different from that defendant Spindler favored.  In the latter case, Spindler stood down, cancelled the mandatory math training for all 6th grade teachers and allowed that school to implement its chosen math program.  Prior to Brunger's intervention, Dr. Buon was not supported in doing the same.

4

In November 2018, defendant Spindler advised plaintiff that she was supposed to be meeting with her monthly as part of Academic Cabinet. By then, outside of disciplinary meetings, defendant Spindler had conducted no such meeting with plaintiff, though she had done so with other principals who were not African American or West Indian. Indeed, by late November 2018, defendant Spindler had never had a one-on-one "academic cabinet" meeting with plaintiff.

On November 30, 2018, a senior administrator provided plaintiff with a critical letter of evaluation which contained false accusations. Plaintiff responded to this letter, explaining why the claims advanced against her were inaccurate and manifested disparate treatment. On December 2, 2018, plaintiff filed an internal complaint alleging that defendant Spindler had discriminatorily created a hostile work environment.

In January 2019, plaintiff learned that she and defendant Spindler were supposed to make a presentation at an academic cabinet meeting. However, defendant Spindler provided plaintiff late notice of this alleged collaboration, making its implementation impossible. Later, defendant Padilla had Dr. Spindler share the district protocol for such collaborations with plaintiff in front of the Academic Cabinet team, thereby humiliating her and making it appear that plaintiff was unprepared to discharge her duties; in fact, defendant Spindler had never timely shared the protocol with plaintiff.

The NECSD used calendar invites to notify principals of meetings. Unless otherwise noted, such invites did not mandate attendance at the referenced meeting. Other secondary school principals did not timely respond to such invites or attend the referenced meeting. These principals were not African American or West Indian. However, contrary to the treatment he accorded her similarly situated peers, defendant Padilla specifically instructed plaintiff to respond to such invites within 24 hours of receipt and required her alone to explain why she could not attend any meeting.

On January 9, 2019, the district's Assistant Superintendent of Human Resources required plaintiff's attendance at a disciplinary meeting to discuss false claims that she had abused sick leave. In fact, unlike a white principal, Glowacki who was permitted to use vacation days to attend a family wedding upon his verbal request, the district required plaintiff to provide written proof of the wedding she wished to attend before considering her requests for vacation days.

In January 2019, the staff member in charge of the RISE program had to leave the district, creating a vacancy for an administrator in charge of the program. The salary was the contractual rate of $81.00 an hour for 2.5 to 3 hours, five days a week or approximately $30,000. As she had previously successfully held this position, plaintiff applied. She fully qualified for this position. However, at defendant Padilla's recommendation, the district gave the position to a newly hired central office administrator who did not hold a school-based job and was neither African American nor West Indian. This candidate was less qualified than plaintiff for the position of RISE administrator and, in recommending and appointing her, defendant Padilla and the district intentionally discriminated against plaintiff based on her race and national origin.

In February 2019, defendant Spindler cancelled the Course Recovery Program, which served academically needy students. However, while she advised one principal, Lopez, who is not African-American or West Indian of the cancellation of the program, defendant Spindler did not advise plaintiff of this action and tried to blame plaintiff for not timely knowing the program had been cancelled.

In February 2019, defendant Padilla claimed that plaintiff was coming to school late, meaning between 6:58am and 7:10am. And, in later removing plaintiff from SMS and reverting her to an elementary school building at a lower salary, Padilla adduced tardiness as one of his grounds. However, in so acting, defendant Padilla ignored the facts that (1) the contract with the

6

administrators' union did not contain a specific start-time, and (2) numerous other similarly situated secondary school administrators reported to school later than plaintiff with no adverse consequences.  Again, through defendant Padilla, defendant district subjected plaintiff to disparate treatment when compared with similarly situated school administrators who were not African American or of West Indian descent.

On February 15, 2019, plaintiff could not attend a meeting to which she had been invited and so responded within 24 hours of receipt of the invite.  However, defendants Spindler and Padilla berated her for not attending, while two other administrators, neither of whom was African-American nor of West Indian descent, failed to respond to the invite at all and did not attend the meeting without any consequence or follow-up by Spindler or Padilla.

In mid-March 2019, defendant Padilla, NECSD's Board of Education President and Deputy Superintendent Ed Forgit hosted a meeting with Newburgh Teacher Association leadership and some teachers from SMS.  The meeting was a gripe session about ongoing issues at SMS, issues which preceded plaintiff's arrival and about which she had attempted to exert educational leadership.  However, rather than defend plaintiff's leadership, defendants Spindler and Padilla devalued her efforts to turn around this troubled school and scapegoated her as a means of appeasing complaining staff.  At this same meeting Dr. Padilla, Ed Forgit and Carol Mineo, BOE President, met with Stacy Moran, NTA President and heard from a small faction of teachers disaffected from plaintiff and credited their allegations about school conditions as against the descriptions and explanations provided by Dr. Buon, an accomplished and experienced school administrator with substantial faculty and community support.

The NTA attorney stated that this meeting was being held to get rid of Dr. Buon.   Dr. Padilla's meeting with a small faction of teachers, with a BOE member present, circumvented due process provided by the grievance procedure in plaintiff's contract.

Later in March 2019, defendant Spindler circumvented plaintiff and attempted to directly question guidance counselor staff about specific students.   District protocol and practice counseled that such inquiries go through the building principal, but defendant Spindler ignored these.

In May 2019, though plaintiff had applied for and was better qualified for the positions, defendants Padilla and the district chose much less experienced persons to administrate the district's summer school program.   Of the five persons chosen, four were Caucasian, one was Latino, and none were African American or West Indian.

The other qualified candidate, Rhode Octobre-Cooper, was of Black, West-Indian Descent. Ms. Octobre-Cooper was also passed over for school principal positions and defendants selected white candidate who did not even meet the qualifications for the positions.   Rob Glowacki, a white candidate, was hired as principal instead of Ms. Octobre-Cooper.   The job posting for this job required a minimum of five years' experience as a building administrator. Mr. Glowacki had no years' experience as a building administrator and was hired over Ms. Octobre-Cooper, who has been the assistant principal at SMS for three years and before that worked as the SS Director. When plaintiff was hired as principal of SMS, Dr. Padilla insisted that Ms. Octobre-Cooper remain at SMS based on her expertise and qualifications as a highly effective administrator.

On May 22, 2019, defendant Padilla told plaintiff he was recommending her termination as principal of SMS.   Defendant Padilla adduced reasons at this meeting and in a letter explaining his decision.   These reasons were all pretextual and plaintiff provided a response within five days, on June 10, 2019.

For the 2018-19 school year, despite this adverse action, which deprived plaintiff of at least $8,000 in salary/year, plaintiff was rated as an effective administrator. Plaintiff sought to mitigate the loss of her salary by grieving her removal and claiming that it was a transfer which would require maintenance of her salary. Defendant district denied this grievance and the transfer cost plaintiff at least $8,000 in salary.

The course of treatment described above caused, and continues to cause, plaintiff substantial public humiliation, embarrassment and emotional distress and anguish. At public meetings, despite strong community support, the defendants maintained their claim that plaintiff had not properly discharged her duties as principal of SMS, necessitating her removal. Such claims were baseless and uttered as part of the discriminatory devaluation of plaintiff's professional contribution and as a cover for the discriminatory treatment accorded plaintiff.

**ARGUMENT**

**<u>Point I</u>**

**Plaintiff served the summons and complaint.**

Plaintiff has attested that she had served the summons and complaint upon Dr. Padilla on his behalf, and on behalf of Dr. Lisa Marie Spindler and the school district. <u>See</u> Declaration of Lisa Buon dated July 21, 2020 ("Buon Decl.").

The parties agree that service of the Summons and Complaint upon Padilla, as Superintendent, would satisfy proper service upon him, the district and Spindler, as he is a person of suitable age and discretion at Dr. Spindler's place of employment. <u>See</u> Fed. R. Civ. P. 4(e) and 4(j); N.Y. C.P.L.R. §§ 308, 311(a)(7); N.Y. Educ. L. §§ 2(13), 1711(2)(a) and 2508(1). Indeed, according to Dr. Buon, district protocol is to serve the school superintendent on behalf of cabinet

9

members and senior staff like Dr. Spindler.  And Dr. Padilla accepted service on behalf of the district, Spindler, and himself.

In addition, the court provided plaintiff leave to serve an Amended Complaint, which she did upon counsel for the district, who has responded with a motion to dismiss on behalf of each defendant.  There is no doubt that each defendant, through counsel, has been served with a copy of the Amended Complaint and dismissing this action and causing its re-filing and serving will not forward any interest.

## Point II

### Plaintiff can maintain a Title VII claim based upon the termination of her position as SMS principal.

Plaintiff timely served a charge of employment discrimination with the EEOC.  See Affirmation of Michael H. Sussman ("Sussman Aff."), Exhibit 1.  Her current lawsuit includes the matters raised therein and they are properly before the Court as she filed her federal action within 90 days of her receipt of a right to sue letter.

Plaintiff's Amended Complaint sets out claims under 42 U.S.C. § 1983 against Padilla for intentional racial discrimination in that he was the decision-maker who directed that she be transferred from SMS to an elementary school, losing $8,000/year in salary.  See Amended Complaint ¶ 92.  Again, the Amended Complaint holds Padilla responsible for failing to hire plaintiff for the summer school position in 2019 under 42 U.S.C. § 1983.  Accordingly, while plaintiff did not re-file her Title VII charge against the district concerning these matters, they remain in the case as against the decision-maker, Padilla.

10

## Point III

### Plaintiff has stated plausible claims of racial and national original discrimination.

Plaintiff alleges that she was subjected to different terms and conditions of employment than her Caucasian and Hispanic peers during the 2018-19 school year and the Amended Complaint provides a litany of specific examples of such disparate treatment by both Dr. Spindler, her immediate supervisor, and Dr. Padilla, the Superintendent of Schools. These include three actions which had very tangible consequences: denying her the on-site administrator position for the RISE program and the $30,000 stipend which accompanied it, denying her summer school assignment of $10,000 and transfer back to the elementary school principal's position, with its salary $8,000 less than that she earned as principal of SMS.[1]

In short, the various other disparate terms and conditions of employment were temporally associated with adverse actions, specifically, demotion, diminution of wages and other tangible losses resulting from her not being allowed to fulfill positions for which she held superior qualifications that those selected. See Fairbrother v. Morrison, 412 F.3d 39, 56-57 (2d Cir. 2005). Here, plaintiff does allege that her title and other objective conditions of employment were adversely affected. Even though the Amended Complaint traces inequitable and discriminatory actions against plaintiff during the 2018-19 year, culminating in the denials of the tangible benefits noted above, defendants claim that it fails to make that association.

Defendants next claim that denial of plaintiff assignments she had previously held in the RISE and summer school programs are not adverse actions. However, according to the Amended Complaint, as a district employee, plaintiff had previously held these positions and was denied

---

[1] The denial of the RISE position, discussed at Paragraphs 47-53 of the Amended Complaint, occurred in January/February 2019, and is included in the EEOC Charge plaintiff filed on or about April 4, 2019. See Exhibit B to Lineen Declaration dated June 23, 2020.

them, not based upon merit, but, rather the discriminatory attitude of both Padilla and Spindler. While defendants claim that plaintiff has not shown how the denial of these positions "altered the terms and conditions of her employment with the district," the Amended Complaint explains that she previously was chosen for these assignments and that she applied and was best qualified for these in 2018-19, but denied both positions. This is plainly an adverse action.

Defendants next claim that, even if denying plaintiff these tangible benefits constituted actionable adverse actions under the Equal Protection Clause and Title VII, the Amended Complaint does not allege sufficient facts to demonstrate a plausible nexus between them and her race/national origin. The court should reject this argument.

Indeed, it is well settled that, to plead a plausible claim of unlawful employment discrimination, an employer need only plead facts making out a *prima facie* case of discrimination, a *de minimis* burden:

> In other words, absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent. The facts alleged must give plausible support to the reduced requirements that arise under McDonnell Douglas in the initial phase of a Title VII litigation. The facts required . . . to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation.

Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015). It is further settled that such "minimal inference of discriminatory motivation" can arise from, among other things, the employer's selection of, or replacement of plaintiff with, someone outside the plaintiff's protected class. See Id. at 312-13 (collecting cases).

Here, the Amended Complaint plainly makes out the elements of a *prima facie* case of discrimination: plaintiff applied for the two positions, Director of the RISE program and Summer School Administrator, was qualified for them, had applied each year, was always chosen, fulfilled them in prior years with success and was not chosen while someone of a different race without those qualifications was selected. See Amended Complaint ¶¶ 47-53, 69-70. This certainly makes out the elements needed to plausibly demonstrate a discrimination claim, and defendants' contrary assertion should be rejected. Likewise, plaintiff's Amended Complaint notes that she was treated in an inferior manner by the same individual defendants when compared with Caucasian and Hispanic comparators, again a sufficient predicate for her Equal Protection and Title VII claims.

Finally, defendants assert that the Board of Education was the final decision-maker as to plaintiff's demotion; however, under state education law, the superintendent of schools was responsible for maintaining or ending plaintiff's probationary employment as SMS principal and, without his support, she could not retain that position. See N.Y. Educ. L. §§ 2509, 2573. Thus, Padilla's alleged discriminatory motivation infected the ultimate decision. See Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 126 (2d Cir. 2004) ("The Board of Education was . . . the ultimate decision maker . . ., but it appears to have voted without making an independent inquiry into the allegations of discrimination and directly after hearing the recommendation of [the Superintendent], which was admittedly influenced by the views of [supervisors]".); See also Konits v. Valley Stream Cent. High Sch. Dist., No. 01-CV-6763, 2006 U.S. Dist. LEXIS 5610, at *14-*16 (E.D.N.Y. Jan. 28, 2006) (recognizing superintendent's role in appointment process).

And, while the district can argue that Padilla had offered plaintiff the position and that it is not plausible that the next year he would deny it to her for discriminatory reasons, this is not an irrebuttable presumption, and plaintiff can certainly demonstrate that Padilla engaged in a pattern

13

of discrimination against West-Indian and African-American employees which reared its head in his treatment of plaintiff after he appointed her out of desperation to save SMS.

Finally, defendants claim that plaintiff has provided too little detail in her Amended Complaint to conclude that those with whom she is comparing herself were similarly situated. However, in the context of challenges to a demotion or a failure to appoint a candidate based upon race, a *prima facie* case is made out by showing that plaintiff applied, was qualified, was denied or removed from the position and that someone from another group received the sought position. As plaintiff's Amended Complaint demonstrates each of these factors, no further detail about those selected is required at this stage of the proceeding.

Likewise, plaintiff's Amended Complaint sufficiently alleges that she was qualified to continue as SMS principal, had strong staff and community support to do so and was disallowed by defendant Padilla, with baseless input from defendant Spindler for demonstrably pretextual reasons. Again, this is sufficient to make out a prima facie case of discrimination and a motion to dismiss is unavailing. To the extent that defendants claim that to make out a claim of race/national origin discrimination, plaintiff must adduce evidence that Padilla or Spindler uttered racial epithets, that plainly is not the law. No such direct evidence is required, and our courts have repeated this ad infinitum.

**Point IV**

**Plaintiff has not pled a hostile work environment claim.**

Plaintiff has not pled a hostile work environment claim; rather, she complains that defendants intentionally discriminated against her in the terms and conditions of her employment in violation of the Fourteenth Amendment and Title VII [where applicable].

## CONCLUSION

As defendants have all been served with the Amended Complaint, and were served by district protocol with the initial *pro se* complaint, and as the Amended Complaint sets forth plausible causes of action against each of the defendants, the motion to dismiss should be denied.

Dated: Goshen, New York
      July 23, 2020

Respectfully submitted,

SUSSMAN & ASSOCIATES
*Attorneys for Plaintiff*

By: _____
     Michael H. Sussman (3497)
     1 Railroad Avenue, Ste. 3
     P.O. Box 1005
     Goshen, New York 10924
     (845) 294-3991 [Tel]
     (845) 294-1623 [Fax]