UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/18/2021
```

LISA BUON,

                              Plaintiff,

        -against-

LISAMARIE SPINDLER, et al,

                              Defendants.

No. 19-cv-6760 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

        Plaintiff Lisa Buon ("Plaintiff") brings this action against Lisamarie Spindler

("Spindler"), Roberto Padilla ("Padilla"), and the Newburgh Enlarged City School District

("Newburgh") (together, "Defendants"). On April 1, 2020, Plaintiff filed a First Amended

Complaint ("FAC"), alleging violations of Title VII of the Civil Rights Act of 1964, as amended,

and the Equal Protection Clause of the Fourteenth Amendment, as made actionable by and

through 42 U.S.C. Section 1983. (ECF No. 28.) Presently before the Court is Defendants' motion

to dismiss the FAC pursuant to Rule 12(b)(2), (4), (5), and (6). (ECF No. 33.) For the following

reasons, the motion to dismiss is GRANTED.

## BACKGROUND

        Plaintiff is an African American woman of West Indian descent. (FAC ¶ 1.) Defendant

Newburgh is a municipal corporation situated in Orange County, New York. (*Id*. ¶ 2.) At all

relevant times, Defendant Padilla was employed by Newburgh as the Superintendent of Schools.

(*Id*. ¶ 3.) During the 2018-2019 school year, Defendant Spindler was employed by Newburgh as

Assistant Superintendent for Secondary Curriculum and Education. (*Id*. ¶ 4.) Neither Padilla nor

Spindler is African American or of West Indian descent. (*Id*. ¶ 4-5.)

For twelve years, Plaintiff served as an elementary school principal at Horizons-on-Hudson, a magnet school operated by Newburgh. (*Id*. ¶ 5.) During spring 2017, Padilla approached Plaintiff and asked whether she would be willing to assume leadership of South Middle School ("SMS"), a troubled school. (*Id*. ¶ 7.) Padilla and Plaintiff negotiated an agreement allowing Plaintiff to retain her tenure as an elementary school principal and on June 21, 2017, Newburgh's Board of Education approved appointment of Plaintiff as the SMS principal. (*Id*. ¶ 9-10.)

During the 2017-2018 school year, Plaintiff served as principal of SMS, coordinated the RISE program,[1] and was assigned to work summer school. (*Id*. ¶ 12.) During that time period, Plaintiff's supervisors did not call her into disciplinary meetings or otherwise raise any issues with her performance. (*Id*. ¶ 13.) In the summer of 2018, Spindler was appointed to a newly created administrative position and became Plaintiff's immediate supervisor. (*Id*. ¶ 14.) During the 2018-2019 school year, Spindler and Padilla consistently criticized Plaintiff and called her to numerous disciplinary meetings. (*Id*. ¶ 15.) During the 2018-2019 school year, Spindler did not subject secondary school administrators of other races or national origins to the same treatment. (*Id*. ¶ 16.)

Between 2017 and 2018, Plaintiff alleges she was treated differently from principals of other races or national origins:

1)      While other secondary school principals were permitted to craft Empire Programs to meet the needs of their buildings, Spindler denied Plaintiff the authority to continue SMS's own program. (*Id*. ¶ 17-18)

---

[1] The FAC does not define the acronym RISE, but the Court believes it may be referring to Restorative Interventions for Student Empowerment.

2)   Padilla supported a request from a white principal to bar a disruptive parent from his schools; however, Plaintiff's similar request was ignored and a violent parent was permitted ongoing access to SMS. (*Id*. ¶ 19.)

3)   In late October 2018, Spindler instructed Plaintiff to advise SMS students that they were not allowed to wear Halloween costumes and to make telephone calls to students with this message. (*Id*. ¶ 20-21.) However, Spindler did not tell any other middle school principals to make these calls and at least three other schools—none of which had an African American or West Indian principal—permitted students to wear Halloween costumes. (*Id*. ¶ 21.)

4)   Although school principals typically accompany administrators when they conduct school "walk throughs," Spindler conducted a "walk through" of SMS without Plaintiff and gave Plaintiff a list of nineteen items that needed correction, many of which had innocent explanations. (*Id*. ¶ 22-25.) Spindler did not treat any other secondary school principals—who were not African American or West Indian—in this manner. (*Id*. ¶ 26.)

5)   In November 2018, SMS's school leadership team ("SLT") recommended "Math in the City" for its math curriculum. (*Id*. ¶ 27.) However, Spindler chastised Plaintiff for this choice and inaccurately claimed that "Math in the City" could not be implemented at a middle school outside of New York City. (*Id*. ¶ 29.) Spindler instructed SMS to use another math program, despite allowing a white principal of another school to choose a program other than the program Spindler favored. (*Id*. ¶ 30.)

6)   In November 2018, Spindler advised Plaintiff that they were supposed to have monthly meetings as part of Academic Cabinet. (*Id*. ¶ 32.) Spindler and Plaintiff had conducted no such meetings, although Spindler had held meetings with principals who were not African American or West Indian. (*Id*. ¶ 33.)

On November 30, 2018, a senior administrator provided Plaintiff with a letter of evaluation which Plaintiff claims contained false accusations. (*Id*. ¶ 35.) Plaintiff responded to the letter and explained why the claims were inaccurate and manifested disparate treatment. (*Id*. ¶ 36.) On December 2, 2018, Plaintiff filed an internal complaint alleging Spindler had discriminatorily created a hostile work environment. (*Id*. ¶ 37.) On January 9, 2019, Plaintiff was required to attend a disciplinary meeting to discuss false claims she abused sick leave. ¶ 46.

Following Plaintiff's complaint, disparate treatment continued:

7)   In January 2019, Plaintiff learned that she and Spindler were supposed to make a presentation at an Academic Cabinet meeting. (*Id*. ¶ 38.) However, Spindler provided

        Plaintiff with late notice of this obligation, making its implementation impossible. (*Id.* ¶ 39.) Padilla asked Spindler to share the district protocol for collaboration in front of the Academic Cabinet team, thereby humiliating Plaintiff and making it appear as though Plaintiff was unprepared. (*Id.* ¶ 40.)

8)      Padilla required Plaintiff to respond to email invites within 24 hours of receipt and to provide an explanation when she was unable to attend. (*Id.* ¶ 45.) Other principals who were not African American or West Indian did not have to do this. ¶ 43.

9)      Plaintiff was required to provide written proof of a wedding in order to use vacation days to attend it, whereas a white principal was permitted to use vacation days to attend a family wedding with only a verbal request. (*Id.* ¶ 47.)

        In January 2019, the staff member in charge of the RISE program left, creating a vacancy. (*Id.* ¶ 48.) The salary was $81 per hour for 12.5-15 hours per week. (*Id.* ¶ 49.) Plaintiff, who had previously held the position, applied. (*Id.* ¶ 50) However, at Padilla's recommendation, the position went to a newly hired administrator who did not hold a school-based job and was neither African American nor West Indian. (*Id.* ¶ 52.)

Plaintiff alleges disparate treatment continued:

10)    Spindler advised another principal of the cancellation of the Course Recovery Program but failed to advise Plaintiff and tried to blame Plaintiff for not knowing the program had been canceled. (*Id.* ¶ 54-55.)

11)    Padilla accused Plaintiff of coming into school late, between 6:58am-7:10am, despite the fact that many administrators came into school late. (*Id.* ¶ 56,58.)

12)    Padilla berated Plaintiff for not attending a meeting, despite her giving advance notice of her inability to attend and despite the fact that two other administrators failed to respond to the invite or attend. (*Id.* ¶ 60-61.)

13)    Spindler circumvented Plaintiff and directly questioned guidance counselor staff about specific students, in violation of district protocol and practice. (*Id.* ¶ 65-66.)

        On April 4, 2019, Plaintiff filed an EEOC charge, alleging ongoing discrimination, beginning in August 2018 due to her race, color, and national origin. (ECF No. 34-2.)

        In May 2019, Plaintiff applied to administer the district's summer school programs and was not selected for the position. Of the five persons chosen, four were Caucasian and one was Latino.

4

Another education professional, Rhode Octobre-Cooper ("Octobre-Cooper") is also Black and of West Indian descent. (*Id*. ¶ 71.) Octobre -Cooper was passed over for a school principal position, which was instead awarded to a white candidate. (*Id*. ¶ 72.) The job posting required a minimum of five years of experience as a building administrator. The successful candidate had no years of experience as a building administrator and was hired over Octobre-Cooper, who had been assistant principal at SMS for three years and before that served as SS Director. (*Id*. ¶ 74.)

On May 22, 2019, Padilla informed Plaintiff he was recommending her termination. (*Id*. ¶ 76.) Nonetheless, Plaintiff was rated as an effective administrator for the 2018-2019 year. (*Id*. ¶ 79.) Plaintiff was then transferred back to a Newburgh elementary principal position, which cost her at least $8,000 in salary. (*Id*. ¶ 81.)

<strong>LEGAL STANDARD</strong>

## I.     Jurisdiction

Rule 12(b)(2) of the Federal Rules of Civil Procedure provides that a defense of "lack of personal jurisdiction" may be asserted in a motion. Fed. R. Civ. P. 12(b)(2). Rule 12(b)(4) governs the defense of "insufficient process" and Rule 12(b)(5) governs the defense of "insufficient service of process."

"An objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service. Technically, therefore, a Rule 12(b)(4) motion is proper only to challenge noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons." *Jackson v. City of New York*, 2015 WL 4470004, at *4 (S.D.N.Y. June 26, 2015) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 (3d ed.2004)).

Rule 12(b)(5) provides for dismissal of a complaint for "insufficient service of process." Fed. R. Civ. P. 12(b)(5). Proper service of process in a federal action is governed by Rule 4(e) of the Federal Rules of Civil Procedure. Under Rule 4(e), service upon an individual within a judicial district of the United States may be completed by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> (2) doing any of the following:
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

"In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, a court must look[ ] to matters outside the complaint to determine whether it has jurisdiction." *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016) (citing *Darden v. DaimlerChrysler North America Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002)). "On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient." *Khan v. Khan*, 360 Fed.Appx. 202, 203 (2d Cir. 2010) (citing *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005)).

## II.      Failure to State a Claim

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine

whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "Although for the purpose of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). It is not necessary for the complaint to assert "detailed factual allegations," but must allege "more than labels and conclusions." *Twombly*, 550 U.S at 555. The facts in the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id*.

## DISCUSSION

### I.    Jurisdiction

Plaintiff filed her original Complaint *pro se* on July 19, 2019.[2] (ECF No. 1.) On July 30, 2019, the Court issued an Order of Service directing the Clerk of the Court to issue Summonses as to each defendant. (ECF No. 6.) The Court directed Plaintiff to serve the Summons and Complaint on each defendant within ninety days and indicated that if Plaintiff did not serve the defendants or request an extension of time within ninety days, the Court might dismiss the action pursuant to Rule 4 and of the Federal Rules of Civil Procedure. (*Id*.)

On April 22, 2020, Plaintiff filed an affidavit of service indicating that Padilla accepted service of Summons on August 5, 2019 on behalf of Newburgh. (ECF No. 31.) The parties agree that Padilla is authorized to accept service both on his own behalf and on behalf of Newburgh. (ECF No. 35 at 8.) *See* Fed. R. Civ. P. 4(j)(2); N.Y. Educ. L. §§ 1711(2)(a) and 2508(1). In a sworn affidavit, Padilla attests that although he was served on August 5, 2019, he received only one copy of a Summons and one handwritten list of individuals, and no copy of the Complaint. (ECF No. 34-3.) Defendants argue that Padilla's testimony is consistent with the affidavit of service, which

---

[2] Plaintiff later retained counsel, who filed the FAC on her behalf.

is titled affidavit of service of *Summons*—i.e., not Summons and Complaint. Because Padilla was allegedly not served with a Complaint, Defendants argue that service of process is insufficient as to Newburgh and Padilla. Further, Defendants argue that even if Padilla was served with the Complaint, he did not receive copies for each defendant. In a sworn declaration, Plaintiff attests that she provided the process server with both the Summons and Complaint and that they were served. (ECF No. 37.) Plaintiff does not indicate whether Padilla was served with multiple copies of the Complaint. (*Id*.) In a sworn affidavit, Spindler attests that she has never been personally served with a Summons in this matter and that she never authorized Padilla to accept service on her behalf. (ECF No. 34-5.)

Based on the documentary evidence presented, is clear to the Court that neither Spindler nor Padilla were properly served. The affidavit of service indicates that Padilla accepted service on behalf of Newburgh but does not indicate that Padilla accepted service on behalf of Spindler or Padilla. Further, even if Padilla did receive a copy of the Complaint—a fact which is disputed— Defendants maintain, and Plaintiff does not dispute, that Padilla did not receive a copy for each defendant. Finally, while Padilla was authorized to accept service on behalf of the Newburgh, he was not authorized to accept service on behalf of Spindler. Accordingly, the Court lacks jurisdiction as to the claims against Spindler and Padilla and they must be dismissed.

Whether service was proper as to Newburgh is less clear; however, the Court need not rule on the matter because the FAC is otherwise properly dismissed on the merits.

## II.     Failure to State a Claim

*A. Title VII*

1. <u>EEOC Charge</u>

8

In New York, a plaintiff typically has 300 days after an alleged discriminatory act to file a charge with either the EEOC or the NYSDHR. *Harris v. City of New York* 186 F.3d 243, 248 n. 2 (2d Cir.1999). Even where a plaintiff files a timely claim for some retaliatory or discriminatory acts, the plaintiff will lose the ability to recover for succeeding related retaliatory or discriminatory if the plaintiff does not amend the original claim or file a new claim. *Id*. Strict adherence to Title VII's filing requirement guarantees equal administration of the law. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 102 (2002); *see also Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980). Various discrete discriminatory or retaliatory acts include claims based on termination, failure to promote, denial of transfer, or refusal to hire. *See McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir.2010). On the other hand, a claim alleging a hostile work environment will not be time barred as long as one alleged act falls within the required time period and the ensuing acts are related to the timely filed act. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 122; *McGullam*, 609 F.3d at 75. In discrimination cases "the illegal act is often the decision to terminate the employee, and the limitations period begins to run on the date that the employer gives definite notice of that decision to the employee." *Flaherty v. Metromail Corp.*, 235 F.3d 133, 137 (2d Cir.2000); *see also Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980); *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981). Therefore, the time for filing a claim with the EEOC starts running on the date when the employee receives definite notice of the termination. *Riddle v. Citigroup*, 449 F. App'x 66, 69 (2d Cir.2011).

Plaintiff filed her EEOC charge in April 2019. In May 2019, Plaintiff failed to secure a summer position and was terminated from her position as SMS principal. Plaintiff did not amend her EEOC charge or file an additional charge following the May 2019 events. Therefore, Plaintiff cannot base her Title VII discrimination claims on the two adverse May 2019 events. Plaintiff

seemingly concedes this issue by arguing that these adverse events can instead be used to support her Equal Protection Clause claims arising under 42 U.S.C. § 1983. ("Opp'n Mem.") (ECF No. 36 at 10.)

2. Discrimination

Title VII provides that an employer cannot discriminate against "any individual" based on his or her "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). "The ultimate issue in any employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment action was motivated, as least in part, by an impermissible reason, i.e., that there was discriminatory intent." *Baffa v. STAT Health Immediate Medical Care, P.C.*, 2013 WL 5234231, at *7 (E.D.N.Y. Sept. 17, 2013) (internal quotes omitted) (citing *Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 119 (2d Cir. 1997)).

Under the *McDonnell Douglas* framework, a plaintiff bears the initial burden of demonstrating her *prima facie* case. *Cortes v. MTA New York Transit*, 802 F.3d 226, 231 (2d Cir. 2015). "To establish a *prima facie* case of discrimination under Title VII, a plaintiff must prove that (1) she is a member of a protected class; (2) she is qualified for the position held; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Stratton v. Dep't for the Aging for N.Y.C.*, 132 F.3d 869, 878 (2d Cir. 1997) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). To satisfy the fourth prong when facing a motion to dismiss "a plaintiff need only give plausible support to a minimal inference of discriminatory motivation." *Id*. (internal quotation marks omitted) (emphasis added). In other words, "a discrimination complaint ... must [still] at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the

line from conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (alterations and internal quotation marks omitted). Additionally, "the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim." *Littlejohn v. City of New York*, 795 F.3d 297, 311 n. 9 (2d Cir. 2015) (internal quotation marks omitted).

The parties do not dispute that Plaintiff is a member of a protected class nor that she is generally qualified for the relevant positions.

## Adverse Action

Plaintiff fails to plead that she suffered an adverse employment action. An adverse employment action is a "'materially adverse change' in the terms and conditions of employment." *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (quoting *Richardson*, 180 F.3d at 446). The Second Circuit has indicated that such an action "is one which is 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)).

The majority of Plaintiff's allegations concern slight alterations of her job responsibilities. For example, Plaintiff alleges that she was required to make phone calls to students to inform them they could not wear Halloween costumes, that she was required to provide timely responses to meeting invitations, that she was not allowed to institute certain programs at her school, and that she was disciplined for being late. None of these types of allegations rise to the level of adverse employment actions. *Johnson v. Long Island Univ.*, 58 F. Supp. 3d 211, 224 (E.D.N.Y. 2014). ("Where assignments fall within the duties of a plaintiff's position, receiving unfavorable schedules or work assignments does not, without more, rise to

the level of an adverse employment action.") (quoting *Williams v. Ford Motor Co.*, 2014 WL

1572302, at *13 (W.D.N.Y. Apr. 18, 2014) (collecting cases)). Further, Plaintiff's negative

performance review, disciplinary meetings, and other forms of criticism do not constitute adverse

employment actions in and of themselves. *Atkins v. Rochester City Sch. Dist.,* 764 F. App'x 117,

119 (2d Cir. 2019) (a negative performance review alone does not constitute an adverse

employment action); *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 570 (2d

Cir. 2011) ("[C]riticism of an employee (which is part of training and necessary to allow

employees to develop, improve and avoid discipline) is not an adverse employment action.").

      This leaves the denial of Plaintiff's application to serve as administrator of the RISE

program.[3] In the education context, courts in this Circuit have routinely found that denial of an

educator's request to participate in additional programs, including paid programs, does not

constitute an adverse employment action. *See Guity v. Uniondale Union Free Sch. Dist*., 2017

WL 9485647 at 18 (E.D.N.Y. Feb. 23, 2017) (holding denial of plaintiff's request to participate

in a paid after-school homework assistance program was not an adverse employment action),

*adopted in* 2017 WL 1233846 (E.D.N.Y. Mar. 31, 2017); *Rodriguez v. Glen Cove City Sch.

Dist.*, No. 14-CV-3815(JS)(ARL), 2016 WL 951524, at *4 (E.D.N.Y. Mar. 8, 2016)

("Defendants' decision not to allow Plaintiff to be a Saturday math academy teacher was not a

material change in the terms and conditions of her employment as a tenured middle school

teacher. Although Plaintiff believed she would be selected to teach the class, Defendants' failure

to fulfill her expectation does not create an adverse employment action."); *Ruggieri v.

Harrington*, 146 F. Supp. 2d 202, 217 (E.D.N.Y. 2001) ("[Plaintiff] simply suffered no adverse

employment action as a result of being denied the occasion to serve as department chair and to

---

[3] As explained above, Plaintiff's failure to amend or file a new EEOC charge bars her termination and denial of her application to administer summer school from being incorporated into Plaintiff's Title VII claims.

teach certain summer courses that she wanted to teach, opportunities to which she was not absolutely entitled simply based on her status as a tenured professor.").

**Inference of Discrimination**

Even if Defendants' actions qualified as adverse employment actions, Plaintiff's employment discrimination claims would still fail because she has not alleged that the foregoing actions occurred in circumstances supporting an inference of discrimination.

"An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)) (internal quotation marks omitted).

"[A] showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group ... is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case." *Humphreys v. Cablevision Sys. Corp.*, 553 F. App'x 13, 14-15 (2d Cir. 2014) (quoting *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)) (internal quotation marks omitted). A plaintiff attempting to raise an inference of discrimination through comparator employees must show that those employees are "similarly situated in all material respects," meaning that they (1) "were subject to the same workplace standards" and (2) engaged in conduct "of comparable seriousness." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000).

Although Plaintiff alleges various instances in which she was treated differently from other principals who were not African American or West Indian, she fails to allege that these

other principals were similarly situated.[4] Moreover, Plaintiff fails to allege that she was denied

the position as RISE administrator under circumstances suggesting an inference of criticism.

Plaintiff does not allege that Defendants made any comments regarding Plaintiff's race, color, or

national origin. Plaintiff indicates that a co-worker who is also African American and West

Indian was passed over for a position as a principal that she applied for, which instead went to a

less-qualified white man. However, Plaintiff again fails to demonstrate any inference of

discrimination with respect to that hiring.

Finally, Plaintiff and Padilla's history supports a finding of no inference of

discrimination. The crux of Plaintiff's FAC is that Padilla advocated for Plaintiff's appointment

to SMS principal, discriminated against her for the roughly two years she served in that position,

and then transferred her back to an elementary school principal position within Newburgh.

*Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 137 (2d Cir. 2000) ("[W]hen the same actor hires

a person already within the protected class, and then later fires that same person, it is difficult to

impute to her an invidious motivation that would be inconsistent with the decision to hire."

(internal quotation marks omitted)).

Accordingly, Plaintiff's Title VII discrimination claims are properly dismissed.

3. Hostile Work Environment

To prevail on a hostile work environment claim under Title VII, a plaintiff must show: "[1]

that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment, and [2] that a specific basis exists for

---

[4] For example, Plaintiff alleges that she was denied the opportunity to implement her proposed "Math in the City" curriculum and was forced to implement Spindler's preferred curriculum. Plaintiff alleges disparate treatment because another principal was permitted to implement a third curriculum. These scenarios are not analogous. Similarly, Plaintiff alleges that she was required to put requests for time off in writing and to respond to meeting invites within 24 hours, yet other principals were not required to do so. However, in the FAC, Plaintiff also indicates that she faced disciplinary action for her tardiness and misuse of sick leave. Therefore, Plaintiffs own pleading reveals that she was not similarly situated to her peers.

imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (internal quotation marks and citations omitted). Finally, (3) the plaintiff must show that the employer "create[d] such an environment because of the plaintiff's sex" or another protected classification. *Patane v. Clark*, 5008 F.3d 106, 113 (2d Cir. 2007).

Although the Court and Defendants both understood Plaintiff to be pleading a hostile work environment claim, Plaintiff's opposition clearly states: "Plaintiff has not pled a hostile work environment claim." (ECF No. 36 at 14.) Therefore, the Court will deem any potential hostile work environment claim withdrawn.

### B.   *Equal Protection Clause*

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To adequately allege a violation, "a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). Plaintiff must also plausibly allege that this disparate treatment "cannot survive the appropriate level of scrutiny" applicable to the alleged discrimination. *Id*. To plead intentional discrimination, a plaintiff must allege that the state expressly classified on the basis of a suspect characteristic, *see Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000), applied a neutral program in an intentionally discriminatory manner, *see id.* (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 373-74(1886)), or promulgated a policy that was motivated by discriminatory animus and that had an adverse effect, *see id.* (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65(1977) and *Johnson v. Wing*, 178 F.3d 611, 615 (2d Cir. 1999)).

15

Plaintiff's allegations of disparate treatment and her personal opinion that such treatment was motivated by discriminatory intent are not enough to prevail on a Section 1983 claim for a violation of the Equal Protection Clause. *See Thomas v. City of New York*, 143 F.3d 31, 37 (2d Cir. 1998) (affirming dismissal of an Equal Protection Clause claim where "plaintiffs did not allege sufficient facts to support discriminatory intent"); *see also Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) ("[A] plaintiff pursuing a ... denial of equal protection ... must show that the discrimination was intentional."); *Knight v. Conn. Dep't of Public Health*, 275 F.3d 156, 166 (2d Cir.2001) (noting that plaintiffs must show "that the decisionmakers ... acted with discriminatory purpose") (quoting *McCleskey v. Kemp*, 481 U.S. 279, 292(1987) (quotation marks omitted)). Plaintiff does not state a claim because she "fails to allege facts 'giving rise to an inference of discrimination on the basis of [Plaintiff's] membership in [a protected] class.'" *Weslowski v. Zugibe*, 14 F.Supp.3d 295, 321(S.D.N.Y. Mar. 31, 2014) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994)).

Therefore, Plaintiff's Equal Protection claims are properly dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the FAC is GRANTED as follows: the claims against Defendants Spindler and Padilla are dismissed for lack of proper service; Plaintiff's claim for hostile work environment is deemed withdrawn; and the claims as asserted in the FAC are dismissed pursuant to Rule 12(b)(6) for failure to assert plausible claims. Although Plaintiff initiated her Complaint *pro se*, the FAC and subsequent briefing were filed with the assistance of counsel. Because the Court finds that notwithstanding service issues, the FAC

would nevertheless be properly dismissed, the FAC is dismissed with prejudice. The Clerk of the

Court is respectfully directed to terminate the motion at ECF No. 33 and close the case.


Dated:    March 18, 2021                                    SO ORDERED:
          White Plains, New York

                                         _____
                                               NELSON S. ROMÁN
                                            United States District Judge